Sophia **BARAJAS, et al., Plaintiffs,**

v.

**UNIFIED GOVERNMENT OF WYAN-DOTTE COUNTY/KANSAS CITY, KANSAS and Kansas City, Kansas Police Department, Defendants.**

No. 99–2448–JWL.

United States District Court,
D. Kansas.

Feb. 17, 2000.

See also 1999 WL 1096038.

Stepehn D. Bonney, Bonney Law Office, Kansas City, MO, Weston R. Moore, Moore Law Office, Overland Park, KS, for Plaintiffs.

Daniel B. Denk, Gregory P. Goheen, McAnany, Van Cleave & Phillips, P.A., Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

The plaintiffs in this case are police officers commissioned by the Kansas City, Kansas Police Department and have brought this action seeking overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Presently before the court is defendants Unified Government of Wyandotte County/Kansas City, Kansas and the Kansas City, Kansas Police Department's motion to dismiss plaintiffs' amended complaint (doc. 6).[1] For the reasons set forth in detail below, defendants' motion is granted in part and denied in part.

### I. Facts

For purposes of the motion currently before the court, the following facts are uncontroverted.[2] Plaintiffs are full-time police officers employed by defendant Kansas City, Kansas Police Department ("KCKPD"), which is a sub-unit of defendant Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government").[3] At some point after October 1, 1996, in addition to their ordinary

1. On October 6, 1999, plaintiffs filed an amended complaint (doc. 5). The only apparent alteration between plaintiffs' original and amended complaint is that the case caption has been modified to correctly reflect that this case is before the United States District Court for the District of Kansas, as opposed to the District of Nebraska, as set forth in the original complaint. On October 12, 1999, defendants filed a supplement to their motion to dismiss (doc. 9), noting that all references to plaintiffs' complaint contained in defendants' motion to dismiss should be modified to refer to the amended complaint. Thus, the court treats defendants' motion to dismiss (doc. 6) as seeking dismissal of plaintiffs' amended complaint.

2. On November 16, 1999, this court granted defendants Unified Government and KCKPD's motion to consolidate this case with *Johnson, et al. v. Unified Government of Wyandotte County/Kansas City, Kansas, et al.,* No. 99–2407–JWL (D.Kan. filed Sept. 10, 1999) for discovery and pretrial proceedings. Defendant Unified Government contends that because "this case has been consolidated with *Johnson,* the Housing Authority is a party to these proceedings and should be afforded the opportunity to respond to plaintiffs' statements." Def.Repl.Br. at 5 n. 3. Defendant is mistaken in this assertion, however. That the cases were ordered to be consolidated for discovery and other pretrial matters does not make Housing Authority a party to the case currently before the court. As a result, Housing Authority need not be afforded an opportunity to controvert the facts asserted by the plaintiffs in this case, and to the extent that the defendants to this action request such relief, that request is denied.

3. In their motion to dismiss, defendants assert that defendant Kansas City, Kansas Police Department is not a proper party to this action because it is a sub-unit of defendant

duties performed for, and on behalf of, the KCKPD, each of the plaintiffs agreed to perform additional patrolling duties in and around certain public housing complexes located within Kansas City, Kansas corporate city limits and managed by the Kansas City, Kansas Housing Authority ("Housing Authority").

Each of the officers participating in the Housing Authority patrol assignment are required to wear their KCKPD-sanctioned uniforms, to drive KCKPD-marked patrol vehicles, to report to, and maintain contact with, the KCKPD police dispatcher, and to observe the code of police conduct as established by the KCKPD. The hours spent per week performing Housing Authority-related patrol varies from plaintiff to plaintiff. Plaintiffs are compensated at a regular hourly rate for providing security in the areas maintained by the Housing Authority, and are paid directly by the Housing Authority for their services. The hours accumulated during Housing Authority patrol were not combined, for overtime compensation purposes, with those spent performing their ordinary police duties.

On September 30, 1999, plaintiffs filed this action claiming that, for purposes of calculating the amount of overtime compensation to which they are entitled, plaintiffs are allowed to consolidate those hours spent patrolling Housing Authority facilities with those accumulated performing their regular KCKPD duties. Defendants move to dismiss, or, in the alternative, for summary judgment on the ground that the hours accumulated during Housing Authority patrol are exempted from the FLSA's overtime compensation requirements.

## II. Legal Standard

Although defendants' motion is captioned as a motion to dismiss, defendants have submitted supplemental evidentiary materials with their motion. "A motion to dismiss for failure to state a claim upon which relief can be granted must be converted into a motion for summary judgment whenever the district court considers matters outside the pleadings." *Lowe v. Town of Fairland, Oklahoma,* 143 F.3d 1378, 1381 (10th Cir.1998). District courts "have broad discretion in determining whether or not to accept materials beyond the pleadings." *Id.* Although plaintiffs contend that summary judgment at this juncture is premature, they have nonetheless responded to defendants' motion as if it were one for summary judgment, and have referred the court to evidentiary materials outside the complaint. Because both parties have included and directed the court's attention to the evidentiary materials filed with their papers, and because the court has considered those documents in determining the issues presented by defendants' motion, the court will treat defendants' motion in light of the summary judgment standard.

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

Unified Government. In their response, plaintiffs do not controvert that contention, and state that they do not object to the dismissal of defendant Kansas City, Kansas Police Department from this action. Accordingly, summary judgment on plaintiffs' claims asserted against defendant Kansas City, Kansas Police Department is granted.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Analysis

The FLSA was enacted in an effort to improve "labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). Pursuant to § 207(a) of the FLSA, employers are required to pay their employees overtime compensation, at a rate of one and a half times their regular hourly wage, for each hour worked in excess of forty hours per week. 29 U.S.C. § 207(a). Section 207(k) of the statute alters the hourly threshold at which overtime compensation is triggered for certain types of public agency employees: fire protection personnel must accumulate fifty-three hours per week before overtime compensation must be paid, and law enforcement employees do not become entitled to overtime compensation until the hours worked exceeds forty-three hours per week. 29 U.S.C. § 207(k); 29 C.F.R. § 553.230(c).

Despite its broad remedial purposes, Congress chose to enumerate several exemptions to the FLSA's mandatory overtime compensation requirements. The effect of such exemptions is tempered, however, by the fact that they must "be 'narrowly construed against ... employers' and are to be withheld except as to persons 'plainly and unmistakably within their terms and spirit.' " *Auer v. Robbins,* 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). As the plaintiffs' employer, defendant Unified Government "bears the burden of proving that particular employees fit 'plainly and unmistakenly within [the exemption's] terms.' " *Ackerman v. Coca–Cola Enters., Inc.,* 179 F.3d 1260, 1264 (10th Cir.1999) (quoting *Reich v. Wyoming,* 993 F.2d 739, 741 (10th Cir. 1993)).

In this case, plaintiffs seek to combine, for purposes of calculating the amount of overtime compensation due from the defendant, the hours accumulated while performing their regular, ordinary patrol duties with those hours spent patrolling areas managed by the Housing Authority. Defendant moves for summary judgment with respect to plaintiffs' claims contending that, for purposes of calculating and determining the amount of overtime compensation to which they are entitled, plaintiffs may not add the hours worked for the Housing Authority to those accumulated while working for defendant Unified Government. More specifically, defendant

claims that plaintiffs fall squarely within 29 U.S.C. § 207(p)(1), the so-called "special detail work" exemption, and that, as a result, the time plaintiffs spent patrolling areas controlled by the Housing Authority may be excluded from the calculation of their overtime pay.

In pertinent part, 29 U.S.C. § 207(p)(1) provides:

> If an individual who is employed by a State, political subdivision of a State, or an interstate governmental agency in fire protection or law enforcement activities ... and who, solely at such individual's option, agrees to be employed on a special detail by a separate or independent employer in ... law enforcement, or related activities, the hours such individual was employed by such separate and independent employer shall be excluded by the public agency employing such individual in the calculation of the hours for which the employee is entitled to overtime compensation under this section if the public agency—
>
> (A) requires that its employees engaged in fire protection, law enforcement, or security activities be hired by a separate and independent employer to perform the special detail,
>
> (B) facilitates the employment of such employees by a separate and independent employer, or
>
> (C) otherwise affects the condition of employment of such employees by a separate and independent employer.

29 U.S.C. § 207(p)(1).

■ As a general rule, where a statute is clear and unambiguous on its face, the court need not consult extrinsic sources of interpretation to determine the meaning of its terms. *Fristoe v. Thompson*, 144 F.3d 627, 631 (10th Cir.1998) (quoting *Southern Ute Indian Tribe v. Amoco Prod. Co.*, 119 F.3d 816, 830 (10th Cir.1997)). Where statutory meaning is unclear from the language of the statute, so long as Congress has delegated the authority to interpret the statute to the agency charged with overseeing its enforcement, the court may seek guidance from any formal regulations promulgated by that agency when defining the statute's terms. *Id.* (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Where the formal regulations are helpful but do not end the inquiry, a court may also consult the relevant agency's informal interpretations to aid in its construction of the statute. *Id.* Such informal interpretations are not, however, "entitled to *Chevron* deference, but will instead be considered only to the extent that [they are] well-reasoned and ha[ve] 'power to persuade.'" *Id.* (quoting *Southern Ute Tribe*, 119 F.3d at 834).

■ Neither party disputes, and it is in fact well-settled in the Tenth Circuit, that Department of Labor ("DOL") regulations interpreting the FLSA "are entitled to judicial deference and are the primary source of guidance for determining the scope of exemptions to the FLSA." *Ackerman*, 179 F.3d at 1264 (citation omitted). The court therefore finds it appropriate to consider the relevant DOL regulation to determine whether plaintiffs' Housing Authority patrol assignments fall within the "special detail work" exemption.

■ Based upon the language of § 207(p)(1)'s "special detail work" exemption, the DOL regulation sets forth the following two-pronged test to determine whether hours worked for another entity may be combined with the hours accrued working for a primary employer: (1) the "special detail" assignment must be undertaken and performed solely at the employee's option, and (2) the two employers must be "in fact separate and independent." [4] 29 C.F.R. § 553.227(b). If both

---

4. The court notes that, in the text of the statute, the separate/ independent terminology is used five times to describe the relationship between the primary and secondary employer. 29 U.S.C. § 207(p)(1). The first time that those words appear in the statute, they are connected by the conjunction "or;" however, at all other times that those words appear in the statute, they are connected by the conjunction "and." *Id.* ("... and who, solely

prongs are satisfied, the exemption applies, and the hours worked for two employers may not be combined when assessing the amount of overtime compensation to which an employee is entitled. *See id.*

In their papers, plaintiffs admit that defendant, as their primary employer, did not order or direct plaintiffs to participate in patrolling the property overseen by Housing Authority and thus concede that the first prong of the "special detail" exemption is satisfied here. In light of that concession, the determination of whether, for purposes of calculating overtime compensation, the hours accrued by plaintiffs while patrolling Housing Authority property may be combined with those spent on ordinary patrol duty for defendant Unified Government turns on whether the Unified Government and the Housing Authority are considered separate and independent employers under § 207(p)(1).

The statute at issue here does not expressly define the term "separate and independent employer." According to the implementing regulation, "whether two employers are, in fact, separate and independent can only be determined on a case-by-case basis." 29 C.F.R. § 553.227(c). Both the statute and the DOL regulation are, however, silent as to what factors are to be considered in the assessment of whether two employers are separate and independent within the meaning of the statute. Moreover, there exists scant legal authority with respect to the scope of § 207(p)(1)'s "special detail" exemption.

In fact, the court's research reveals only one case in which the applicability of § 207(p)(1)'s exemption has been litigated, *see Crow v. City of Derby, Kansas,* 1992 WL 363682 (D.Kan. Nov.13, 1992), and that unreported case does not expressly address the issue of what constitutes "separate and independent" employers as that term is used in the statute.

In light of the dearth of statutory authority and caselaw on this subject, plaintiff urges the court to consider certain pieces of informal correspondence generated by the DOL's Wage and Hour Division to determine whether defendant Unified Government and the Housing Authority qualify as separate and independent employers. More specifically, plaintiffs refer the court to several DOL opinion letters, most particularly a DOL opinion letter dated July 1, 1993 in which the applicability of the § 207(p)(1) exemption was examined.

In the July 1, 1993 opinion letter, the DOL considered whether security services provided by county police officers at a county vocational and technical school qualified under § 207(p)(1)'s "special detail work" exemption. *See* FLSA Op. Letter, 1993 WL 901149 (July 1, 1993). According to the DOL administrator, because the two entities were not "separate and independent employers" within the meaning of § 207(p)(1), the hours accumulated working for both entities were required to be combined for purposes of calculating the

at such individual's option, agrees to be employed on a special detail by a separate *or* independent employer in fire protection, law enforcement, or related activities, the hours such individual was employed by such separate *and* independent employer shall be excluded .... in the calculation [of overtime compensation] if the public agency—(A) requires that its employees ... be hired by a separate *and* independent employer ... (B) facilitates the employment of such employees by a separate *and* independent employer, or (C) otherwise affects the condition of employment of such employees by a separate *and* independent employer.") (emphasis added). Despite the above-noted use of the term "or" in the statute, the remaining statutory text,

the legislative history of the section, the implementing federal regulations, and the DOL opinion letters discussing the section all refer to the "separate/ independent" terminology in the conjunctive. Although plaintiffs directed the court's attention to this issue in their papers, defendant does not address the issue, and instead uses the "separate *and* independent" terminology without exception. In light of the fact that the defendant has no objection, and has not referred the court to, nor can the court find, any authority for the proposition that there is any substantive significance to the apparent inconsistency, the court will likewise refer to the "separate/ independent" employer requirement in the conjunctive.

police officers' entitlement to overtime compensation. In arriving at this conclusion, the administrator found relevant the following facts: (1) the vocational school board was appointed by the chief elected county officer, (2) the county superintendent of schools served as an *ex officio* member of the school board, (3) the fiscal requirements of the vocational school were determined and provided for by the county government, and (4) the Census of Governments classified county vocational schools as dependent agencies of city governments, rather than as separate governments. *Id.* The conclusion that such security work did not fall within § 207(p)(1)'s exemption was reached despite the following facts: (1) over half of the county vocational school's budget (fifty-five percent) was provided by the state, while the remaining forty-five percent was financed by the county, (2) the county and the school were treated as separate employers for payroll purposes, (3) the county and the school dealt with other governmental agencies at arms' length regarding the employment of any individual, (4) both entities maintained separate retirement benefits systems, (5) the county and the school are independent entities with full authority to perform all of the acts necessary for their functions, and (6) both could sue and be sued in their own names.

Defendant maintains that such informally-issued DOL opinion letter's relevance to the issues before the court, if any, is extremely limited, and instead insists that the Housing Authority and defendant Unified Government are indeed "separate and independent" employers. To the extent that the court is willing to consider such opinion letters, however, defendant directs the court's attention to an earlier DOL opinion letter dated October 10, 1985.[5] In

that letter, the administrator sets forth the following factors as relevant to the determination of whether "two or more agencies of a State government [are] separate employers under [the] FLSA:"

1.  The agencies are treated as separate employers from other State agencies for payroll purposes,

2.  the agencies deal with other State agencies at arms' length concerning the employment of any individual,

3.  the agencies have separate budgets or funding authorities,

4.  the agencies participate in separate employee retirement systems,

5.  the agencies are independent entities with full authority to perform all of the acts necessary to their functions under State statutes, and

6.  the agencies can sue and be sued in their own names.

FLSA Op. Letter dated Oct. 10, 1985. Although the defendant apparently contends that the July 1, 1993 and October 10, 1985 opinion letters are somehow inconsistent, the court notes that each of the factors set forth in the October 10, 1985 DOL opinion letter was considered by the DOL administrator in reaching the conclusion expressed in the July 1, 1993 opinion letter. The court therefore finds no basis, insofar as the October 10, 1985 DOL opinion letter is concerned, to ignore or otherwise discount the July 1, 1993 DOL opinion letter.

As set forth above, to the extent that they are "well-reasoned and have power to persuade," informal agency interpretations may be consulted by a court attempting to discern statutory meaning. *Fristoe*, 144 F.3d at 631 (rejecting interpretation set forth in Federal Bureau of Prisons' informal "program statement"). The court

---

**5.** The court notes that, although the "special detail work" exemption was not enacted until October 17, 1985, seven days after the DOL opinion letter to which defendant refers was issued, it is nevertheless relevant because it sets forth certain criteria for determining whether two employers are "joint employers" under the FLSA, the precise section to which § 207(p)(1) was enacted as an exemption.

*See* 29 C.F.R. § 553.227(f) ("The principles [exempting off-duty work performed solely at the employee's option for a separate and independent employer] are exceptions to the usual rules on joint employment" which require that hours accumulated working for joint employers must be combined for purposes of overtime compensation).

finds the factors considered by the DOL in issuing these letters wholly relevant to the issue of whether two employers are "separate and independent," and finds the analysis set forth therein cogent and persuasive. Indeed, the opinion letters are thorough in that several factors are considered and no one factor is accorded excessive weight in the overall analysis. The court therefore finds it reasonable to consider the factors identified by the DOL as relevant to the "separate and independent" inquiry, and will therefore evaluate the facts of this case in light of those factual considerations. *See, e.g., Furr's Supermarkets, Inc. v. United Food and Commercial Workers Union, Local 1564,* 129 F.3d 130 (table), 1997 WL 699063, at *5 (10th Cir. Nov.10, 1997) (discussing deference to be accorded to an opinion letter of the Wage–Hour Administrator applying the FLSA: A court ... should even be "hesitant to contravene an informal agency opinion interpreting a statute") (citation omitted).

Pursuant to Kan.Stat.Ann. § 17–2340, Kansas municipalities are empowered to create, as an agent of the municipality, "an authority to be known as the 'housing authority' of the municipality." K.S.A § 17–2340. That section further provides that:

> [t]he municipality may delegate to such authority any or all of the powers conferred on the municipality by this act, and may authorize it to employ an executive director, technical experts and such other officers, agents and employees, permanent and temporary, as it may require, and to delegate to one or more of its agents or employees such powers or duties as the authority may deem proper. Such housing authority shall have the power to sue and be sued.

K.S.A. § 17–2340. On August 6, 1957, the City of Kansas City, Kansas adopted Resolution Numbers 15872 and 15873, whereby the "Housing Authority of Kansas City, Kansas" was created pursuant to K.S.A. § 17–2340.[6]

■ As set forth above, the defendant contends that the Housing Authority and the Unified Government are separate and independent employers within the meaning of § 207(p)(1). To support this theory, defendant refers the court to the following facts: (1) the Housing Authority was granted and enjoys all powers conferred on defendant Unified Government, (2) the Housing Authority is a separate and suable entity, (3) the Housing Authority has the power to hire employees, (4) the Housing Authority and the Unified Government are assigned different employer numbers by both the Internal Revenue Service and the Kansas Department of Revenue, (5) the Census of Governments lists the Housing Authority as a separate government, (6) both entities maintain separate personnel policies, as well as workers' compensation and group health insurance benefits.[7]

Plaintiffs, on the other hand, contend that the Housing Authority and the Unified Government cannot, as a matter of law, be considered separate and independent employers under § 207(p)(1). To that end, plaintiffs argue that the Housing Authority was created by defendant Unified Government, and point out that Unified Government appoints the members to the Housing Authority's operating board, the Housing Authority Commission. Additionally, rather than offering separate retirement programs for their employees, one of the factors identified by the October 10, 1985 DOL opinion letter, both entities participate in the same retirement pro-

---

6. Those resolutions were recreated by Ordinance Numbers 64614 and 64615, which were enacted on March 1, 1984. On June 4, 1998, Resolution Numbers 15872 and 15783, recreated as Ordinance Numbers 64614 and 64615 were amended by Ordinance Numbers O–31–98 and O–70–99 to reflect the consolidation of the City of Kansas City, Kansas with Wyandotte County in the form of the Unified Government.

7. The court notes that, although defendant alleges that both entities also maintain separate payrolls, defendant has failed to provide any evidence with respect to that assertion.

gram, the Kansas Public Employees Retirement System ("KPERS").

After considering the facts of this case in light of the factors articulated by the DOL's Wage and Hour Division as probative to the determination of whether two employers are separate and independent, the court concludes that defendant has failed to establish that no material issues of fact remain for trial. More specifically, the court notes that there exists on the summary judgment record no evidence with respect to the extent of control, if any, defendant Unified Government exercises with respect to the Housing Authority's budget, and the extent to which, if at all, the Housing Authority's operating functions are financed by the Unified Government.[8] Such evidence is necessarily required, in the court's opinion, to determine whether the Housing Authority and the Unified Government are separate and independent employers under § 207(p)(1).

The importance of the budgetary control factor is apparent from both the October 10, 1985 DOL opinion letter offered by the defendant as well as the July 1, 1993 opinion letter offered by the plaintiffs. Indeed, the third of the five factors identified as relevant to determining whether two employers are separate under the FLSA in the October 10, 1985 letter is whether "the agencies have separate budgets or funding authorities." DOL Op. Letter dated Oct. 10, 1985. Similarly, while it is not entirely clear precisely how much weight the factor was accorded, the budget control issue was certainly considered by the administrator in his July 1, 1993 determination regarding the applicability of § 207(p)(1) exemption to the facts with which he was presented. It is entirely possible that, although functioning as separate entities in the superficial sense, for all practical purposes, the Housing Authority, if funded and financially-managed by defendant Unified Government, is not truly independent from the Unified Government. Therefore, the court finds the budgetary control factor highly relevant to the determination of whether two employers are in fact separate and independent for purposes of § 207(p)(1).

As a result, the court concludes that, in the absence of any evidence regarding the extent of financial control defendant Unified Government may, or may not, exercise with respect to the Housing Authority, a determination regarding the issue of whether the entities are separate and independent employers simply cannot be made. Thus, although defendant Unified Government has provided evidence with respect to several of the factors identified by the DOL as relevant to the "separate and independent" inquiry, because the court believes that the issues of budgetary control and/or financial provisions are crucial to the determination of whether the two entities are in fact separate and independent employers for purposes of § 207(p)(1), summary judgment on this issue is inappropriate at this time. Defendant's motion must be denied.

**IT IS THEREFORE BY THE COURT ORDERED THAT** defendants' motion for summary judgment (doc. 6) is granted in part and denied in part. The motion is granted to the extent that defendant Kansas City Kansas Police Department is not a separately suable entity and is, therefore, not a proper party to this suit. The motion is denied as to all remaining issues.

**IT IS FURTHER ORDERED THAT** a telephone status conference be conducted in this case on February 23, 2000 at 11:00 a.m. to discuss scheduling and alternative

8. In its papers, defendant Unified Government makes the bare assertion that the Housing Authority obtained a grant of "Public Housing Drug Elimination Funds" from the United States Department of Housing and Urban Development. Def.Mem. in Supp. at 4, ¶ 11. Contrary to the requirements of D.Kan.Rule 56 for consideration on summary judgment, defendant has failed to support that assertion with specific evidentiary facts. *See* D.Kan. Rule 56 ("[t]he facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies.") As a result, the court has not considered this factual assertion in its resolution of defendant's motion.

dispute resolution. The court will arrange the call.